Eastern District of Kentucky
F I L E D
MAY 17 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

SALAH MOHAMED,[1]           )
                            )
    Petitioner,              )    Civil No. 0: 19-32-HRW
                            )
V.                          )
                            )
J. C. STREEVAL, Warden,      )    **MEMORANDUM OPINION**
                            )    **AND ORDER**
    Respondent.              )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Salah Mohamed has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the imposition of a prison disciplinary sanction. [D. E. No. 1] The Court must screen the petition pursuant to 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).[2]

---

[1] In prior criminal proceedings the petitioner was identified as "Saleh Mohammed." *United States v. Saleh Mohamed*, No. 3: 11-CR-280-HEH-2 (E.D. Va. 2011). To ensure consistency across federal court records, the Court will direct the Clerk to modify the docket to reflect "Saleh Mohamed" as an alternative designation for the petitioner.

[2] A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Mohamed's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief.") (citations and internal quotation marks omitted).

1

In 2012, Mohamed was sentenced in Richmond, Virginia to 246 months imprisonment for his role in a conspiracy to traffic in crack cocaine and heroin, sell contraband cigarettes, and to launder the proceeds. *United States v. Saleh Mohamed*, No. 3: 11-CR-280-HEH-2 (E.D. Va. 2011). While serving that sentence in Bureau of Prisons ("BOP") custody at the federal penitentiary in Lee, Virginia, in April and May 2017 Mohamed conspired with another inmate to escape the facility, obtain forged passports, and return to Yemen. On May 3, 2017, Mohamed walked off the prison grounds, but was captured in Mexico three weeks later. Mohamed subsequently pleaded guilty to conspiracy to escape from a federal correctional institution and escape from federal custody, and in mid-2017 he was sentenced to 60 months imprisonment. *United States v. Salah Mohamed*, No. 2: 17-CR-14-JPJ (W.D. Va. 2017).

Mohamed's escape was not just a crime, but also a prison disciplinary offense. Shortly after he escaped, in May 2017 prison officials in Virginia issued an Incident Report charging Mohamed with Escape from a Non-Secure Institution, a BOP Code 102 offense. [D. E. No. 1-1 at Page ID #17] BOP officials did not immediately prosecute that offense because Mohamed was on the lam, or even after his capture because he was then being prosecuted in federal court for six months. Following his assignment to a new federal prison in Ashland, Kentucky, BOP officials resumed prosecution of the disciplinary offense and in March 2018 issued an updated Incident

2

Report. On March 29, 2018, a Disciplinary Hearing Officer ("DHO") held a hearing on the charges. Mohamed admitted the escape but asked for leniency with respect to the suspension of telephone privileges so that he could communicate with his family and children in Yemen. The DHO found Mohamed guilty of the offense and imposed several sanctions, including the disallowance of 54 days of good conduct time and the suspension of telephone privileges for one year. [D. E. No. 1-1 at Page ID #18-24]

On April 4, 2018, Mohammed filed an appeal to the Regional Office. He did not assert any impropriety in the processing of the charges or the DHO hearing, but instead noted that a criminal sentence had already been imposed for his escape and requested that his telephone privileges be restored so that he could speak with his family. [D. E. No. 1-1 at Page ID #25-28] While that appeal was still pending, the DHO issued an amended DHO report on May 11, 2018. The amended report was substantially identical to the original save for an expanded statement explaining the reasons for the sanctions imposed. Mohamed, having not yet received a decision from the Regional Office, filed an appeal from the amended DHO Report on May 31, 2018. As before, he admitted that he had escaped but asked only that "consideration be given to substituting some other sanction for the telephone restriction or modifying the telephone restriction to permit communication with my children." [D. E. No. 1-1 at Page ID #30-35]

The Regional Office denied Mohamed's original appeal on May 23, 2018, noting that procedures were properly followed and the sanction was appropriate. [D. E. No. 1-1 at Page ID #29] Mohamed filed an appeal to the Central Office on June 8, 2018, complaining that the prosecution of the disciplinary offense was delayed following his escape and prosecution, and expressing confusion as to why an amended DHO Report had been issued and its impact on his appeal of his sanctions. Characterizing these events as a failure by the BOP to follow its own regulations regarding disciplinary charges, Mohammed asked the BOP to expunge the conviction and sanctions. The Central Office rejected that appeal on July 12, 2018 for failure to include the correct number of copies, but afforded Mohamed fifteen days to correct the error and resubmit his appeal. *Id.* at Page ID # 36-38. The Regional Office denied Mohammed's second appeal on July 18, 2018, for the same reasons it denied the first. On August 3, 2018, in a single packet Mohamed sent documents to the Central Office: (1) to address the deficiencies in his first appeal to the Central Office, and (2) to file an appeal to the Central Office from the Regional Office's denial of his second appeal. [D. E. No. 1-1 at Page ID #36-41][3] Mohamed states that the Central Office has not responded to either of his appeals. [D. E. No. 1 at Page ID #7]

---

[3] Mohamed's August 3, 2018 mailing to the Central Office was sent beyond the fifteen days afforded by the Central Office to correct the deficiencies identified in his original appeal.

4

In his petition, Mohamed contends that his disciplinary conviction and the resulting sanctions should be expunged because the BOP did not follow its own regulations in numerous respects. Specifically, he argues that the Unit Disciplinary Committee and/or DHO was required to hold a hearing on his disciplinary charges while he was still a fugitive or while his criminal prosecution was ongoing; the DHO was not an impartial decision maker because he must have been "involved" in its prosecution because the investigating officer rewrote the original Incident Report on the same day the DHO requested that he do so; the DHO's disallowance of 54 days of good conduct time was not warranted by appropriate aggravating circumstances; and the DHO was not authorized to file an amended DHO Report. [D. E. No. 1 at Page ID #8-15]

Having thoroughly reviewed the petition and the materials provided in support of it, the Court will deny the petition because the claims asserted within it are both unexhausted and substantively without merit.

Before a prisoner may seek habeas relief under Section 2241, he must exhaust his administrative remedies within the Bureau of Prisons. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006). The purpose of the exhaustion

requirement is to ensure that the agency has an opportunity to review and revise its actions before litigation is commenced, which preserves both judicial resources and administrative autonomy, and also to ensure that a court reviewing the agency's final action does so upon a developed and complete evidentiary record. *Noriega-Lopez v. Ashcroft*, 335 F. 3d 874, 881 (9th Cir. 2003); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996).

In both of Mohamed's appeals he admitted guilt of the escape charge but asked only that his telephone privileges be restored immediately or sooner than one year. [D. E. No. 1-1 at Page ID #25-28; 30-35] He raised no other claim, and none of the matters he now asserts in his habeas petition were mentioned. In his appeal to the Central Office Mohamed did assert – for the first time – some of his complaints about the BOP's processing of the disciplinary charges. [D. E. No. 1-1 at Page ID # 36-41] But this is not permitted: "[a]n inmate may not raise in an Appeal issues not raised in the lower level filings." 28 C.F.R. § 542.15(b)(2).

Independent of the BOP regulation which prohibits such sandbagging, courts do not permit a habeas petitioner to assert a claim which was not first presented to prison authorities for consideration. To properly exhaust a claim, an inmate must identify the issue with sufficient particularity to permit prison officials a reasonable opportunity to address it. *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). An inmate may not assert a claim in litigation that is wholly distinct, factually or legally,

from the one presented to prison officials during the grievance process. *Johnson v. Woodford*, No. CV 04-05995-GHK, 2010 WL 4007308, at *4 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim."); *Watson–El v. Wilson*, No. 08-C-7036, 2010 WL 3732127, at *9 (N.D. Ill. Sept. 15, 2010) (habeas claim different than claim presented in prison grievances "cannot [be pursued] in federal court having never given the prison the opportunity to investigate and correct the situation. The plaintiff's grievance was insufficient to alert prison officials to the 'nature of the wrong.'"); *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at *4-6 (E.D. Ky. Jan. 4, 2011) (collecting cases). Because Mohamed did not properly present his present claims to the BOP during the inmate grievance process, they are unexhausted and cannot be asserted in this proceeding.

Mohamed's complaints regarding the BOP's handling of the Incident Report are also without merit. As a preliminary matter, Mohamed's threshold assertion that he has a property or liberty interest in BOP regulations and the contents of its Program Statements that is protectable under the Due Process Clause is incorrect. With respect to BOP regulations, they are "primarily designed to guide correctional officials in the administration of a prison", not to "confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, an agency's failure to follow its

7

own policies in a given instance does not of itself implicate due process rights. *See, e.g., Bonner v. Federal Bureau of Prisons,* 196 F. App'x 447, 448 (8th Cir. 2006) ("[A] violation of prison regulations in itself does not give rise to a constitutional violation."); *Hovater v. Robinson,* 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation."). And the BOP's Program Statements are not regulations at all but are merely internal interpretive rules, *Reno v. Koray,* 515 U.S. 50, 61 (1995), and do not create enforceable rights or obligations. Thus even an admitted failure to strictly follow BOP regulations or internal guidelines would not provide a basis for habeas relief.

Even if they did, the BOP's actions are consistent with its own rules. First, when Mohamed escaped and was subject to pending criminal charges, the BOP properly deferred consideration of its disciplinary sanctions until that process was concluded. BOP Program Statement ("PS") 5270.09 Ch. 2 (July 8, 2011) ("When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation. Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing. The incident report should then be delivered to the inmate by the end of the next business day. The time frame for processing the Incident report is suspended until it is released for processing."). Nor were the Unit Disciplinary Committee or

8

the DHO required to hold a hearing on his charges *in absentia*. Because Mohamed was charged with a Greatest Severity Act, the UDC is not involved except in a purely ministerial capacity, as it must automatically refer the charges to the DHO. 28 C.F.R. § 541.7(a)(4). And the DHO has the option, not the obligation, to hold an *in absentia* hearing. PS 5270.09 Ch. 5 ("When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than in-absentia hearing may be held at the DHO's discretion."). In this case, the BOP deferred consideration of the disciplinary charges until the criminal charges were resolved, by which time Mohamed was in custody in Kentucky, not Virginia. The BOP acted in accordance with its own rules and regulations.

The Incident Report was also rewritten once the criminal prosecution was over, and the DHO filed an amended report after the original was issued. But the additions to these documents were merely explanatory; no material changes were made, and Mohamed claims no prejudice resulting from them. He also claims that the DHO was biased because the rewritten Incident Report was issued on the same day the DHO requested. The mere fact that a revised report was issued promptly supports no inference that the DHO was in any way involved in its creation or was biased. A mere allegation of bias does not undermine the presumption of integrity afforded a prison disciplinary tribunal; instead, the petitioner must provide "some substantial countervailing reason to conclude that a decision maker is actually biased

9

with respect to factual issues being adjudicated." *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998). The offered grounds simply provide no basis to suggest either the DHO's involvement in the investigative process or bias on his part.

Finally, even assuming Mohammed can challenge the amount of good time disallowed in a habeas petition, the DHO's disallowance of 54 days of good conduct time was not improper. The applicable regulation required that at least 41 days be disallowed. 28 C.F.R. § 541.4(b)(1). In imposing more than that amount, the DHO did not act arbitrarily in concluding that Mohamed's conduct warranted the maximum penalty of 54 days: while in prison Mohamed conspired with both another inmate and an outside party in Yemen to effectuate the escape, he sought and obtained forged passports, fled the country, and evidenced no intention to return. Such circumstances amply justify the modest increase in penalty pursuant to PS 5270.09 Ch. 1(B.1). Mohamed's claims for relief are therefore substantively without merit.

Accordingly, it is **ORDERED** as follows:

1. The Clerk of the Court shall **MODIFY** the docket to reflect "Saleh Mohamed" as an alternative designation for the petitioner.

2. Salah Mohamed's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D. E. No. 1] is **DENIED**.

3.  This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This the 17th day of May, 2019.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge